IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SEAN D. WOODSON,
    Plaintiff,
    v.                                  CIVIL ACTION NO. 13-4057

ERIC GIBBS, et al.,
    Defendants.

## MEMORANDUM OPINION

Rufe, J.                                                                   April 25, 2014

Plaintiff Sean D. Woodson has filed a prisoner's civil rights complaint against several federal officials, alleging that they violated his constitutional rights by searching certain materials, which he characterizes as legal materials, stored in his cell, and not immediately returning those materials to him, and also challenging his conditions of confinement. Before the Court is Defendants' motion to dismiss Woodson's complaint for failure to state a claim. Woodson has not filed a response to the Motion. However, his Complaint does contain legal argument as to the viability of his claims, in addition to setting forth factual allegations.

I.     Factual Allegations[1]

The events at issue occurred while Woodson was a pretrial detainee in federal custody, charged with being a felon in possession of a firearm. The Complaint alleges that on February 19, 2013, correctional officers entered Woodson's cell and removed him to a Special Housing Unit cell without his belongings. One officer then inventoried his property, which included six books, one of which was religious, and three feet of legal materials. From February 19, 2013, until March 22, 2013, Woodson repeatedly informed prison officials that he was representing

---

[1] Except as noted, the facts are taken from Woodson's Complaint and the attachments thereto. For the purpose of this Opinion, the Court accepts all factual allegations as true and makes all reasonable inference in favor of Plaintiff.

himself in a pending criminal matter and needed access to his legal materials. The materials were not immediately returned.

On February 21, 2013, defendant Eric Gibbs informed Woodson that he was in the process of searching the materials from Woodson's cell. An unnamed prison official informed Woodson that defendants Eric Harris and Captain Nash were also searching his legal materials. On March 12, 2013, Woodson was told that employees of the United States Attorneys' Office were also searching and copying his legal materials. And on March 25, 2013, he was advised, through an affidavit of defendant William Jezior[2] that the Bureau of Alcohol, Tobacco, Firearms and Explosives had also participated in the search of Woodson's belongings. The Jezior affidavit stated that Woodson's properly marked outgoing legal mail had not and would not be opened during the search, and his properly marked incoming legal mail had not been opened and would not be opened outside of his presence, per the Bureau of Prison's policy. However, the affidavit stated that Woodson had improperly marked some general mail with a "legal mail" notation.

According to the Jezior affidavit, the search was initiated after the prison received a telephone call from Detective Muska of the State's Attorney's Office in Baltimore, Maryland, expressing suspicion that Woodson was forging court orders. Specifically, the Maryland officials suspected that Defendant had presented forged Orders of Expungement to various law enforcement agencies and the Baltimore County Court, in conjunction with a request to strike certain convictions from his record.

On March 6, 2013, Woodson's stand-by counsel, Peter Levin, Esq., wrote to advise him that defendants Jennifer Welsh and Marisa Davidson were alleging that Woodson was writing

---

[2] The affidavit was submitted as an attachment to Woodson's Complaint.

2

and selling documents to other prisoners, that he had a razor concealed in a court transcript,[3] that he was forging court documents with judges' signatures, and that he was paying a prisoner's wife to have her husband say a gun was his; the letter also advised Woodson that he was in the Special Housing Unit because their investigation of these issues was ongoing.

On March 22, 2013, Woodson was granted access to his legal materials. He found them to be in disarray and alleges that approximately 30 documents were missing. Woodson was permitted to take eight inches worth of legal materials back to his cell, and the remaining documents were stored elsewhere. Legal documents which appeared to be forgeries were not returned to Woodson, as they were considered contraband.

Defendant Jennifer Welsh later used documents found during this search to support her prosecution of Woodson on new criminal charges. On April 2, 2013, a grand jury returned a nine-count superseding indictment, five counts of which were obstruction of justice counts based on evidence of forged court documents and witness tampering found during the challenged search.[4] The District of Delaware denied Woodson's motion to suppress the evidence found during the prison cell search, finding that his legal materials had not been examined or copied during the search, and that the Fourth Amendment did not protect Woodson, as a pretrial detainee, against searches of his prison cell.[5]

Woodson now alleges that the search of his cell and seizure of his legal materials was unreasonable and unsupported by probable cause, in violation of his rights under the Fourth Amendment, because the cell search was initiated by a non-prison employee for reasons other

---

[3] The Jezior affidavit also noted that during the search of Woodson's cell, detention center staff found several razor blades within Woodson's documents, including several found inside a hollowed-out court transcript and one with a make-shift handle found within his pocket bible.

[4] The Court takes judicial notice of the District of Delaware's June 26, 2013 memorandum opinion in *United States v. Woodson*, No. 09-cr-117.

[5] *Id.* at 8, 9.

3

than institutional security,[6] and written materials and contraband found during this search led to new criminal charges against him. He further alleges that the search violated his rights under the First and Sixth Amendments.[7] Finally, he alleges that the search led to his ongoing confinement in a windowless Special Housing Unit cell, which he asserts is a form of cruel and unusual punishment in violation of his rights under the Eighth Amendment.

II.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[8] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[9] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[10] Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[11] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[12] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[13] Legal

---

[6] Citing *United States v. Cohen*, 796 F.2d 20 (2nd Cir. 1986).
[7] Citing *Abu-Jamal v. Price*, 154 F.3d 128 (3d Cir. 1997), and cases from other circuits.
[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[9] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).
[10] *Twombly*, 550 U.S. at 555, 564.
[11] *Id.* at 570.
[12] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).
[13] *Id.* (quoting *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42-43 (6th Cir. 1988)).

4

questions that depend upon a developed factual record are not properly the subject of a motion to dismiss.[14]

III. Discussion

    A. *Fourth Amendment Claims*

Woodson first challenges the search of his cell generally, alleging that the search violated his Fourth Amendment rights. Although he acknowledges the Supreme Court's clear holding that prisoners and pretrial detainees have no reasonable expectation of privacy in their prison cells, and are not entitled to Fourth Amendment protection against searches for contraband,[15] Woodson cites and relies upon a Second Circuit case which held, in the context of a criminal prosecution, that inmates do retain some Fourth Amendment rights even while incarcerated, reasoning that "here the search was initiated by the prosecution solely to obtain information for a superseding indictment. In our view, this kind of warrantless search of a prisoner's cell falls well outside the rationale of the decided cases. Barr retains a Fourth Amendment right—though much diminished in scope—tangible enough to mount the attack on this warrantless search."[16]

The Second Circuit's decision is not binding on this Court, and is not persuasive in the context of the facts alleged in this case. Plaintiff here alleges that the prison officials themselves initiated the search, after receiving a tip from law enforcement agents in Maryland who suspected that Woodson was forging court documents. Because forged court documents could affect detention center security, the Court concludes as a matter of law, as did the District of Delaware court, that Woodson was not entitled to Fourth Amendment protection with regard to

---

[14] *See, e.g., TriState HVAC Equip., LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (E.D. Pa. 2011).
[15] *Hudson v. Palmer*, 468 U.S. 517, 527 (1984) (proscriptions against unreasonable searches do not apply within the confines of a prison cell); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (pretrial detainees do not have superior rights to convicted prisoners).
[16] *U.S. v. Cohen* 796 F.2d 20, 24 (2d Cir. 1986).

5

this search. Accordingly, the search itself was justified, and the Court will dismiss his Fourth Amendment claims.

B.   *First Amendment Claims*

Woodson also claims that his right to access the courts was impaired, either by his lack of access to his legal materials for approximately one month or by the search of his legal materials. To state a claim for denial of access to the Courts under the First Amendment, one must allege both official actions which frustrated his attempts to litigate an action, and an actual injury.[17]

It is undisputed that Woodson was denied access to his legal materials for a period of time, which may have imposed a burden on his ability to create and submit motions, as alleged. However, Woodson alleges no facts from which the Court can find that this harmed Woodson's pending legal proceedings or the filing of a non-frivolous claim. He has not alleged that he missed a filing deadline or statute of limitations, was unprepared for a court appearance, or any other actual injury. In addition, it appears that denying Woodson access to his legal materials while the search proceeded was warranted by legitimate security concerns, including the possession of razor blades concealed inside a court transcript. Accordingly, the Court must dismiss Plaintiff's claim that he was improperly denied access to the courts.

To the extent that Woodson attempts to allege that the prison's examination of his confidential legal materials violated his First Amendment "confidentiality protections" or interfered with his ability to communicate with counsel, he again fails to state a claim. Woodson fails to allege that he was prevented from communicating with stand-by counsel, or that any legal correspondence with stand-by counsel was read during the search. The Jezior affidavit, which Plaintiff attached to the Complaint, states that genuine legal correspondence was not read. The search did include an examination of certain correspondence which was marked "legal

---

[17] *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Jones v. Brown*, 461 F. 3d 353, 359 n.6 (3d Cir. 2006).

correspondence" but which was in fact personal correspondence. This was not a constitutional violation, as personal correspondence may be examined as necessary in the interests of prison security, and the false labelling of the correspondence gave officials reason to believe that the mail might include "disapproved content."[18] A court transcript was also searched (and a razor blade was found concealed inside), but as court transcripts are available to the public and are not confidential legal materials, Woodson had no privacy interest which was violated by that search. The complaint alleges no facts from which the Court could conclude that the search of Woodson's legal materials and correspondence violated his privacy rights or went beyond the legitimate security interests of penal administration.

    C.    *Sixth Amendment Claims*

With regard to his Sixth Amendment rights, Woodson argues that his right to a fair trial was impaired by the search of the legal materials in his cell. Specifically, he alleges that the government's access to his pre-trial preparation prejudiced him in the presentation of his defense. However, he points to no specific trial-preparation documents which were improperly turned over to the prosecutors in his pending case. The government argues that the rights enumerated in the Sixth Amendment are not implicated in this case, and the Court agrees. Woodson has not alleged facts supporting a claim for deprivation of any Sixth Amendment right.

    D.    *Eighth Amendment Claims*

To prevail on an Eighth Amendment claim of cruel and unusual punishment, Woodson must allege that he suffered a deprivation which was objectively serious, and that prison officials were deliberately indifferent to a substantial risk of harm.[19] Plaintiff alleges no facts in support of an Eighth Amendment violation, other than to allege that he was moved to a windowless cell

---

[18] *U.S. v. Ligambi*, 886 F. Supp. 2d 492, 497 (E.D. Pa. 2012).
[19] *Farmer v. Brennan*, 511 U.S. 825 (1994).

on the Special Housing Unit. He has pled no facts suggesting that he was moved to the Special Housing Unit without penological justification; in fact, multiple razor blades were found in his former cell. Although Plaintiff alleges that being confined in the Special Housing Unit has caused him psychological distress, including hair and weight loss, hives, nervousness, nightmares, auditory hallucinations, fear and depression, he does not allege that the prison officials were made aware of and have been deliberately indifferent to an objectively serious deprivation, nor that his distress stems from housing on the Special Housing Unit in particular, as opposed to conditions of incarceration generally.[20] This claim must also be dismissed.

IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss will be granted. An appropriate Order follows.

---

[20] *Sandin v. Conner,* 515 U.S. 472 (1995).